UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11-cv-8-RJC

| | |
|---|---|
| ROBERT WOODWARD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TIM L. DAUGHERTY, et al., )<br>)<br>Defendants. )<br>_____ ) | ORDER |

**THIS MATTER** comes before the Court on Defendants' Motions for Summary Judgment, (Doc. Nos. 47 & 72). In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the necessity of filing responses to both motions and of the manner in which evidence could be submitted to the Court. See (Doc. Nos. 52; 79). On July 28, 2011, and on November 24, 2011, Plaintiff filed his Responses. (Doc. Nos. 57; 81).

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

In this action brought under 42 U.S.C. § 1983, Plaintiff alleges that Defendants were deliberately indifferent to serious medical conditions suffered by Plaintiff during Plaintiff's periods of incarceration at the Lincoln County, North Carolina jail facility. It is undisputed that Plaintiff was housed in the jail from August 6, 2009, to September 15, 2009, and then again from November 5, 2009, to November 17, 2009. During his stay from August 6, 2009, to September 15, 2009, Plaintiff contends that he never received any treatment for his diabetes, cholesterol, or triglycerides. Plaintiff alleges that Defendant Hoyle "refused to let him declare a medical emergency" on September 13, 2009, leading Plaintiff to "suffer . . . from severe pain from a kidney stone." (Doc. No. 1 at 18). Plaintiff returned to the jail on November 5, 2009, and stayed until November 17, 2009. He alleges that he was treated for "absolutely nothing" during this time period and that on November 17, 2009, Hoyle again "refused to let him declare a medical emergency." (Id. at 12).

In two separate motions, Defendants have moved for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act and that there is no evidence that any defendant was deliberately indifferent to any medical needs of Plaintiff.

## II.    STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

FED. R. CIV. P. 56(a). The rule goes on to provide procedures for responding to a motion for summary judgment:

> (c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to

2

show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted) (quoting FED. R. CIV. P. 56).

## III. DISCUSSION

The Prison Litigation Reform Act of 1995 ("PLRA") mandates that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life . . . ." 534 U.S. 516, 532 (2002). In Woodford v. Ngo, the Supreme Court stated that "[p]risoners must exhaust all 'available' remedies, not just those that meet federal standards." 548 U.S. 81, 85 (2006). The Court further explained that proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. at 90. Thus, exhaustion is mandatory, and unexhausted claims may not be litigated in federal court. Jones v. Bock, 549 U.S. 199, 211 (2007). Consequently, a prisoner does not comply with the mandatory requirements of 42 U.S.C. § 1997e(a) by exhausting his remedies during the course of litigation; exhaustion must occur before the filing of the lawsuit, or the case must be dismissed. See Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (The PLRA requires that "prisoners . . . exhaust such administrative remedies as are available prior to filing suit in federal court.") (internal quotations omitted); Green v. Rubenstein, 644 F. Supp. 2d 723, 743 (S.D. W. Va. 2009) ("The plain language of the [PLRA] makes exhaustion a precondition to filing an action in federal

Court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.") (quoting Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)).

At the time of Plaintiff's incarceration, the Lincoln County Sheriff's Office had in place a formal written policy concerning inmate grievances. (Doc. No. 47-2: Houser Decl. at ¶¶ 2-11 & Ex. 1 to Houser Decl.). When inmates arrive at the jail, they receive an inmate handbook, which describes inmate policies and procedures. (Id. ¶ 4 & Ex. 1 to Houser Decl. at 1). An inmate may file a grievance about jail policies and procedures, conditions within the jail, employee's actions, personal property complaints, or allegations of abuse, neglect, or mistreatment by staff. (Id. ¶ 6 & Ex. 1 to Houser Decl. at 2). If an inmate requests a grievance form, the inmate is given a grievance form. (Id. ¶ 5 & Ex. 1 to Houser Decl. at 3). The completed grievance is then returned to an officer who forwards the grievance to the shift supervisor coordinator. (Id. ¶ 7 & Ex. 1 to Houser Decl. at 3). The shift supervisor then responds to the grievance within five working days. (Id. ¶ 9 & Ex. 1 to Houser Decl. at 4). An inmate may appeal the shift supervisor's decision to the detention administrator by filing a written appeal within twenty-four hours. (Id. ¶ 10 & Ex. 1 to Houser Decl. at 4). The detention administrator then responds to the appeal within ten working days. (Id. ¶ 11 & Ex. 1 to Houser Decl. at 4).

After searching their records, Defendants produced four grievances, dated from August 6, 2009, until November 5, 2009. (Id. ¶ 14 & Exs. 2-5 to Houser Decl.). However, none of these grievances relate to the allegations in Plaintiff's Complaint that Hoyle failed to allow him to declare a medical emergency on September 13, 2009. (See Doc. No. 1: Complaint at 18). Plaintiff's grievances during this time period concern a third man being in his cell, complaints about diabetes, toilet paper, and a kidney stone. (Doc. No. 47-2: Houser Decl. ¶ 14 & Houser Decl. Exs. 2-5).

The grievance concerning the kidney stone was filed on September 10, 2009, three days before Defendant Hoyle's alleged failure to allow him to declare a medical emergency. (Id. at Ex. 5). In addition, the September 10, 2009, grievance does not name Defendant Hoyle as

4

required by the Jail's grievance policy. (Id. ¶ 8, Houser Decl. Ex. 1 at 3; Ex. 5). In response to this grievance, the Sheriff's Office informed Plaintiff that they talked with the nurse on September 11, 2009, and that she was giving him "better pain meds" and "every attempt to help you is being done." (Houser Decl. Ex. 5). There is no record that Plaintiff appealed the response to this or any other grievance as required by the Jail's grievance policy. (Houser Decl. ¶¶ 12-14 & Houser Decl. Ex. 1 at 4). Thus, Defendants have shown that Plaintiff has failed to exhaust administrative remedies with regard to his claims related to the period of incarceration from August 6, 2009, to September 15, 2009. The evidence of record also indicates that Plaintiff did not file any grievances from November 5, 2009, until November 17, 2009. (Id. ¶ 15). As a result, he has also not exhausted his administrative remedies as to claims related to this period of incarceration.

Here, Defendants have shown that Plaintiff has failed to exhaust his administrative remedies with respect to the claims in his Complaint. Thus, his Complaint is subject to being dismissed without prejudice for failure to exhaust his administrative remedies.

In response, Plaintiff argues that he submitted numerous grievances that were not acknowledged by jail personnel, (Doc. No. 48: Response at 5). Plaintiff further claims that his mother talked with a jailer concerning a November 7, 2009 grievance. Plaintiff has not produced any of the allegedly lost grievances concerning the subject matter of his lawsuit. Plaintiff also claims that he wrote letters to both the Sheriff and Medical Examiner of Lincoln County. Plaintiff has not shown, however, how such letters amount to grievances under the jail's grievance policy. Finally, and significantly, there has been absolutely no showing that, beyond filing grievances, Plaintiff took the necessary steps to exhaust the jail's grievance policy through appealing any adverse determination. A plaintiff must first exhaust all levels of the available grievance procedure before commencing litigation in federal court. Porter v. Nussle, 534 U.S. at 524. Here, Plaintiff has simply failed to rebut Defendants' showing that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Plaintiff's Complaint will therefore

5

be dismissed without prejudice for failure to exhaust his administrative remedies.

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motions for Summary Judgment, (Doc. Nos. 47; 72), are **GRANTED**; and

2. Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED** without prejudice for Plaintiff's failure to exhaust his administrative remedies before filing this action.

Signed: February 28, 2012

Robert J. Conrad, Jr.
Chief United States District Judge